TROY LAW, PLLC
41-25 Kissena Boulevard Suite 110
Flushing, NY 11355
Tel: (718) 762-1324
*Attorney for the Plaintiff, proposed FLSA Collective and potential Rule 23 Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Case No. 23-cv-03401

-----------------------------------------------------------------x

JENNIPHER RENEE FORTE,
*on her own behalf and on behalf of others similarly situated*

Plaintiff,

v.

INSOMNIA COOKIES, LLC
  d/b/a Insomnia Cookies;
SERVE U BRANDS, INC.;
SETH BERKOWITZ

Defendants.

-----------------------------------------------------------------x

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**FED. R. CIV. P. 23 CLASS**
**ACTION**

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff JENNIPHER RENEE FORTE (hereinafter referred to as "Plaintiff"), on behalf of themselves and others similarly situated, by and through their attorneys, Troy Law, PLLC, hereby bring this complaint against Defendants INSOMNIA COOKIES LLC d/b/a Insomnia Cookies; SERVE U BRANDS, INC.; and SETH BERKOWITZ, and alleges as follows:

### INTRODUCTION

1.      This action is brought by the Plaintiff JENNIPHER RENEE FORTE, on behalf of herself as well as other employees similarly situated, against the Defendants for alleged violations of the Fair Labor Standards Act, (FLSA) 29 U.S.C. § 201 *et seq*, and Indiana wage-and-hour laws arising from Defendants' various willful, malicious, and unlawful employment policies, patterns and practices.

2.      Upon information and belief, Defendants have willfully, maliciously, and intentionally committed widespread violations of the FLSA and state wage-and-hour laws by

engaging in pattern and practice of failing to pay its employees, including Plaintiff, minimum wage for each hour worked.

3.      Plaintiff FORTE alleges pursuant to the FLSA, that she is entitled to recover from the Defendants: (1) liquidated damages, (3) prejudgment and post-judgement interest; and or (4) attorney's fees and cost.

4.      Plaintiff FORTE further alleges pursuant under the Indianan Code and IMWL that she is entitled to recover from defendants (1) unpaid wages; (2) liquidated damages and/or (3) attorney fees and costs.

## JURISDICTION AND VENUE

5.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and has supplemental jurisdiction over the Indiana state wage-and-hour claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) because Defendants conduct business in this District, and Defendants' principal place of business is in this District.

## PLAINTIFF

7.      Plaintiff JENNIPHER FORTE was employed by Defendants to work as a Delivery Driver for Corporate Defendant INSOMNIA COOKIES at one of Corporate Defendants store located at 2130 South Bend Avenue, South Bend, Indiana, 46637.

## DEFENDANTS

### Corporate Defendants

8.      Defendant INSOMNIA COOKIES, LLC d/b/a Insomnia Cookies is a domestic

business corporation organized under the laws of the State of New York with a principal

address at 440 Park Avenue South, 14th Floor, New York, NY 10016.

9.     INSOMNIA COOKIES, LLC d/b/a Insomnia Cookies is a business engaged in

interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000)

per year.

10.     INSOMNIA COOKIES, LLC d/b/a Insomnia Cookies purchased and handled

goods moved in interstate commerce.

11.     SERVE U BRANDS, INC. is the parent company of INSOMNIA COOKIES,

LLC.

12.     SERVE U BRANDS, INC. is a domestic corporation incorporated in the State

of New York with a principal address at 345 Seventh Avenue, Suite 1202, New York, NY

10001.

13.     SERVE U BRANDS, INC. is a business engaged in interstate commerce that

has gross sales in excess of five hundred thousand dollars ($500,000) per year.

14.     SERVE U BRANDS, INC. purchased and handled goods moved in interstate

commerce.

***Owner/Operator Defendants***

15.     SETH BERKOWITZ the Owner and Founder, and CEO of INSOMNIA

COOKIES, (1) had the power to hire and fire employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method

of payment, and (4) maintained employee records at INSOMNIA COOKIES; SERVE U

BRANDS INC.

16.     SETH BERKOWITZ had operational control over INSOMNIA COOKIES,

LLC and over the activities of Plaintiff and actively manages both corporations.

17.     SETH BERKOWITZ was responsible for retail at all the Insomnia Cookies locations, obtaining FDA appoval and finding investors.

18.     SETH BERKOWITZ had and has the authority to make decisions that concern the policies, operations and functions relating to Employement, Human Resources and Payroll at INSOMNIA COOKIES, LLC.

19.     SETH BERKOWITZ acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, Indiana wage-and-hour laws and the regulations thereunder, and is jointly and severally liable with INSOMNIA COOKIES, LLC; and SERVE U BRANDS, INC.

## STATEMENT OF FACTS

### Corporate Defendant INSOMNIA COOKIES, LLC and its parent company SERVE U BRANDS, INC. Constitute an Enterprise

20.     INSOMNIA COOKIES operates over 100 stores located across the United States.

21.     Corporate Defendant INSOMNIA COOKOES share materials and workers, including Plaintiff among their locations.

22.     Upon information and belief, Corporate Defendants INSOMNIA COOKIES, LLC and SERVE U BRANDS, INC. constitute an enterprise as the term is defined by 29 USC §203(r) insofar as they engaged in related activities performed through unified operation and/or common control for a common business purpose, and are co-owned by the same partners.

23.     At all times relevant herein, Corporate Defendants were, and continue to be, an "enterprise engaged in commerce" within the meaning of FLSA.

24.     At all relevant times, the work performed by Plaintiff were directly essential to the business operated by INSOMNIA COOKIES, LLC and SERVE U BRANDS, INC.

## Wage and Hour Claims

25.     Defendants committed the following alleged acts knowingly, intentionally willfully, and maliciously against the Plaintiff, the FLSA Collective Plaintiffs, and the Class.

### *Plaintiff JENNIPHER FORTE*

26.     From on or about December 15, 2022 to the February 4, 2023, Plaintiff JENNIPHER FORTE was employed by Defendants to work as a Delivery Driver at 2130 S Bend Avenue, South Bend, Indiana 46637.

27.     From on or about October 26, 2019 to August 03, 2021, Plaintiff JENNIPHER FORTE's regular work schedule ran as follows: for around four (4) days for between around six (6) to eight (8) hours per day, or approximately thirty two (32) hours a week.

28.     At all relevant times, Plaintiff  JENNIPHER FORTE did not have a fixed time for lunch or for dinner.

29.     From on or about December 15, 2022 to the February 4, 2023, Plaintiff JENNIFER FORTE was paid an hourly rate of Seven Dollars ($7.00) per hour, plus $2.50 per delivery performed.

30.     At all relevant times, Plaintiff JENNIPHER FORTE was never informed of her hourly pay rate or any tip deductions toward the minimum wage.

31.     Further, at all relevant times, Plaintiff JENNIPHER FORTE  had to make the cookie boxes, make sure the shelves are stacked with created boxes, and take out the trash while being on call for deliveries.

32.     At all relevant times, Plaintiff JENNIPHER FORTE's non-tipped work

exceeds twenty percent (20%) of Plaintiff's workday.

33.     Further, at all relevant times, Plaintiff JENNIPHER FORTE had her tips misappropriated.

34.     Plaintiff JENNIPHER FORTE noticed that many orders that she has begun to deliver was changed to "not delivery," preventing her from getting the $2.50 per delivery plus any customer tips.

35.     Throughout her employment, Plaintiff JENNIPHER FORTE was not given a statement with her weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay.

36.     As part of Plaintiff's employment with Defendants, Plaintiff JENNIPHER FORTE was required to bear the cost of the purchase of a motor vehicle and the costs of the gasoline.

37.     In delivering food to Defendants' customers, Plaintiff JENNIPHER FORTE drives an average of 4 to 8 miles.

38.     Plaintiff JENNIPHER FORTE was not reimbursed by Defendants for the cost of the gasoline or the cost of maintaining the delivery vehicle for Defendants' benefit.

39.     When JENNIPHER FORTE questioned the changes made to the delivery orders, which changed to "undelivered"—thereby depriving her of the promised $2.50 per order plus customer tips—she was told that she was "sneaky" and a "snake" by General Manager KENNETH PINKERTON.

40.     KENNETH PINKERTON also made inappropriate comments including

medically diagnosing Plaintiff with ADHD.

41.     Thereafter, Defendants through the action of General Manager KENNETH PINKERTON, further took away the ability of JENNIPHER FORTE to check the timing of the deliveries as well as any tips received from the customers.

42.     To make matters worse, Insomnia Cookie's delivery driver, at Defendants' bequest, switched Plaintiff's bag such that the new bag cut Plaintiff's finger.

43.     Thereafter, Insomnia Cookie's delivery driver, at Defendants' bequest, put a plastic spider in Plaintiff's delivery bag. Defendants sent Plaintiff home early three (3) to four (4) days, causing her to lose out on hours and tips.

44.     Lastly, on or about February 4, 2023, KENNETH PINKERTON called Plaintiff into the office and told her that she was going to be written up for crying after slipping and falling from the snow on premises. PINKERTON thereafter forced Plaintiff to resign.

45.     However, in reality, it was pretextual because Defendants' treatment of Plaintiff leading up to her ultimate "resignation"was designed to intimate and harass Plaintiff for speaking up against the unlawful wage and hour practices of Defendants.

<u>**COLLECTIVE ACTION ALLEGATIONS**</u>

46.     Plaintiff brings this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at their promised hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

47.     Plaintiff FORTE brings her Indiana claims Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is three years before the filing of the Complaint in this case as defined herein (the "Class Period").

48.     All said persons, including Plaintiff, are referred to herein as the "Class."

49.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

### *Numerosity*

50.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

### *Commonality*

51.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.      Whether Defendant employed Plaintiff and the Class within the meaning of the state wage-and-hour laws of Indiana;

b.      Whether Plaintiff and Class members are required to provide and maintain tools of the trade on Defendants' behalf at their own cost;

c.      Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiff and the Rule 23 Class's start of employment and/or timely thereafter; and

d.      At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

*Typicality*

52.     Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

53.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage-and-hour employment litigation cases.

*Superiority*

54.     A class action is superior to other available methods for the fair and efficient

adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

54. Upon information and belief, Defendants and other employers throughout the state violate the Indiana Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure

employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
**[Violations of the Fair Labor Standards Act—Failure to Pay Minimum Wage/ Unpaid Wages**
**Brought on behalf of the Plaintiff and the FLSA Collective]**

56.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

57.     At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff in full, and the similarly situated collective action members, for some or all of the hours they worked.

58.     The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

59.     Defendants knowingly, willfully, and maliciously disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiff and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

### COUNT II.
**[Failure to Pay Wages in Violation of the Indiana Wage Payment Statute**
**Brought on behalf of Plaintiff and the Class]**

60.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

61.     Plaintiff was not paid for all work performed for Defendants.

62.    Plaintiff suffered financial harm as a result of not being paid.

63.    Defendant did not and does not have a reasonable basis to not have paid

Plaintiff his earned wages.

## COUNT III.
### [Violation of Indiana Code §22-2-2-8(a)—Failure to Provide a Wage Statement
### Brought on behalf of Plaintiff and the Class]

64.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

though fully set forth herein.

65.    Indiana Code §22-2-2-8(a) states, 'Every employer subject to the provisions of

this chapter or to any rule or order issued under this chapter shall each pay period furnish to

each employee a statement that includes at least the following information: (1) the Hours

worked by the employee, (2) the Wages paid to the employee, and (3) A listing of the

deductions made by the employer.'

66.    Plaintiff did not receive any statement that included the following things set

out in the previous paragraph when he was paid monthly by the defendants.

67.    Defendants knowingly, willfully and maliciously disregarded the provisions of

the Indiana Code by failing to provide Plaintiff with a statement with the (1) hours that

Plaintiff worked; (2) the wages that Plaintiff was going to be paid and (3) a listing of any

deductions made by the defendants.


## COUNT IV.
### [Breach of Implied Contract for Reimbursement of all Costs and Expenses of Electric
### Delivery Vehicle, including Depreciation, Insurance, Maintenance and Repairs
### Brought on behalf of the Plaintiff and the Class]

68.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

though fully set forth herein.

69.     Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including bicycles and electric bicycles.

70.     Based on his personal experience and available information, Plaintiff can document actual "out-of-pocket" vehicle related expenses of her electricity delivery bicycle.

71.     The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiff to maintain the delivery vehicle in working condition.

72.     Plaintiff purchased, maintained and repaired the electric bicycle at her own expense.

73.     Plaintiff performed these deliveries for the sole benefit of the Defendants.

74.     Defendants neither explicitly nor implicitly requested Plaintiff to cease the purchase of gasoline and/or the maintenance of the vehicle.

75.     As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiff would incur the expenses for bicycle purchase and vehicle maintenance, in exchange for compensation from Defendants for such expenses.

76.     Defendants never compensated Plaintiff for any expenses incurred from the purchase and maintenance of the electric bicycles, and the purchase of batteries. As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiff a reasonable sum under the afore-alleged facts.

77.     Defendants owe Plaintiff her overdue costs of delivery vehicles, cost of batter change, if applicable, and maintenance of the bicycle.

## COUNT V.
### [Defendants' Failure To Pay To Delivery Experts Working "On The Road"
### Brought on Behalf of Plaintiff and the Class]

78.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

79.     Throughout the relevant period, Defendants required their delivery experts to maintain and provide a safe, functioning, insured and legally-operable automobile to make deliveries.

80.     Throughout the relevant period, Defendants required their delivery experts to bear all of the "out-of-pocket" costs associated with their vehicles, including costs for gasoline, vehicle depreciation, insurance, maintenance and repairs. For decades, the Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate for businesses and employees to use in computing the *minimum* deductible costs of operating an automobile for business purposes.

81.     For 2020, the IRS Standard Mileage Rate is $0.575 per mile.

82.     For 2021, the IRS Standard Mileage Rate is $0.560 per mile.

83.     For 2022, the IRS Standard Mileage Rate is $0.585 per mile.

84.     For 2023, the IRS Standard Mileage Rate is $0.655 per mile.

## COUNT VI.
### [Violation of 29 U.S.C. § 215(a)(3)—Retaliation
### Brought on behalf of Plaintiff JENNIPHER FORTE]

85.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

86.     Defendants have willfully violated the anti-retaliation provisions of the FLSA, which prohibit "any person" from "discharging or in any other manner discriminating against an employee because that employee has engaged in protected conduct." 29 U.S.C. §

215(a)(3).

87.    Defendants' General Manager, who upon information and belief is,

KENNETH PINKERTON is a "person" within the meaning of 29 U.S.C. §. §203(e)(1) and

215(a)(3), subject to individual liability for retaliatory conduct.

88.    Plaintiff JENNIPHER FORTE is an "employee" within the meaning of 29

U.S.C. § 203(a) and 215(a)(3).

89.    Plaintiff JENNIPHER FORTE engaged in "protected conduct" by questioning

Defendants for its unlawful practices.

90.    Defendants' manager KENNETH PINKERTON has harassed and threatened

employees, terminated Plaintiff JENNIPHER FORTE, and has discriminated against

employees as a result of her questioning of Defendants' unlawful conduct.

## COUNT VII.
### [Violation of Indiana Code § 22-2-2-11—Retaliation
### Brought on behalf of Plaintiff JENNIPHER FORTE]

91.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as

though fully set forth herein.

92.    Defendants have willfully violated Indiana Code § 22-2-2-11, which states, " (a)

An employer or his agent who: (1) discharges or otherwise discriminates in regard to tenure or

condition of employment against any employee because the employee has: (A) instituted or

participated in the institution of any action to recover wages under this chapter; or (B) demanded

the payment of wages under this chapter; (2) pays or agrees to pay any employee less than the

minimum wage prescribed by section 4 of this chapter; or (3) fails to keep records required by

section 8 of this chapter; commits a Class C infraction. An employer or his agent who: disco

employer or his agent …shall discharge, penalize or in any other manner discriminate against

any employee because such employee has… caused to be instituted a proceeding."

93.     Defendants have harassed and threatened employees, terminated Plaintiff, and discriminated against employees as a result of her demanding for an accounting of the missing hours and pay.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, on behalf of herself, and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following relief:

a)      Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of his right to join this lawsuit;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and Indiana State Law;

e)      An injunction against Corporate Defendant, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage due under FLSA and Indiana Minimum Wage Law due Plaintiff and the Collective Action members plus compensatory and liquidated damages;

g)      An award of liquidated and/or punitive damages as a result of Defendants' knowing, willful, and malicious failure to pay wages at least the hourly minimum wage pursuant to 29 U.S.C. §216;

h)      The cost and disbursements of this action;

i)      An award of prejudgment and post-judgment fees;

j)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.


Furthermore, Plaintiff respectfully requests that this Court enter a judgment for her retaliation claims providing the following relief:

(a) enjoining Defendants from harassing, intimidating, threatening and terminating Toasties employees because they have exercised their rights under the FLSA and the Labor Law;

(b) declaring that Defendants have violated anti-retaliation provisions of the FLSA, 29 U.S.C. § 206, as to Plaintiff;

(c) awarding Plaintiff backpay for lost wages;

(d) awarding Plaintiff liquidated damages;

(e) awarding Plaintiff prejudgment interest;

(f) awarding Plaintiff reasonable attorneys' fees and costs pursuant to the FLSA and Indiana

Law;

(g) directing Defendants to pay Plaintiff compensatory damages for mental anguish,

emotional distress and humiliation;

(h) directing Defendants to pay Plaintiff punitive damages for their intentional disregard of

and reckless indifference to Plaintiff's rights; and;

(i)  providing such other and further relief as the Court deems proper.


### **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) and 38(c) of the Federal Rules of Civil Procedures, Plaintiff demands a trial by jury on all questions of facts.


Dated: April 23, 2023
       Flushing, New York

TROY LAW, PLLC
*Attorneys for the Plaintiff, proposed FLSA*
*Collective and potential Rule 23 Class*

*/s/ John Troy*
John Troy